UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 10cr10335-RGS |
| ) | |
| MICHAEL PROCHILO, JR. ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR RELEASE

November 24, 2009

SOROKIN, M.J.

The Indictment alleges that Michael Prochilo Jr. conspired to distribute and to possess with intent to distribute marijuana between May, 2009 and June 8, 2009 in violation of 21 U.S.C. § 846. The Indictment further alleges that the conspiracy involved at least one hundred kilograms of marijuana resulting in a mandatory minimum sentence, in the event of a conviction, of five years with a maximum sentence of life imprisonment. The United States moved to detain Prochilo on the grounds that there are no conditions which will reasonably assure the appearance of Prochilo as required, the safety of any other person or the serious risk that Prochilo will obstruct justice. The Court held a hearing on this motion at which the parties proceeded, by agreement, by proffer. At the conclusion of the hearing, the Court allowed the motion of the United States orally, explained the basis for detention and ordered the defendant detained. A

brief written order of detention followed.

Prochilo has now filed a motion for reconsideration and release in which he proposes additional conditions, chiefly, over one million dollars in property and bonds to secure both his appearance and his compliance with any conditions of release. This proposal merits further consideration; accordingly the Court has undertaken a fresh review of the motion for detention. The facts set forth below are drawn from the exhibits and letters submitted by the parties.

Prochilo was born and raised in Boston. For approximately twelve of his first sixteen years his father was incarcerated.[1] Prochilo's mother was a heroin addict as was his father, at least during the time he was not incarcerated. Prochilo was left to care for his brother and a sister who was twelve years his junior. He spent much of youth raising this sister as a parent and as a provider by foraging for food and means of support. Prochilo's now adult sister remains supportive of him and, in the PSR, described him in positive terms.

Prochilo left school in tenth grade (although he subsequently obtained his GED while in custody); he is also described as intelligent in the PSR. His criminal record is extensive. From age 15 in 1985 until age twenty in 1991, Prochilo was repeatedly committed to DYS custody and convicted, as an adult, of Breaking and Entering in the Nightime, Receiving Stolen Property, Possession of Burglarious Tools, Operating to Endanger, Failing to Stop for Police Officer, Carrying a Dangerous Weapon (Knife), Assault and Battery with a Dangerous Weapon (two counts, both knives), Assault and Battery on a Police Officer (two counts), Breaking and

---

[1] This and some other facts are drawn from the PSR submitted by the United States. Although the conviction pursuant to which the Probation Office prepared this PSR was reversed by the First Circuit and subsequently an acquittal ensued, the personal and criminal history facts are relevant to the bail hearing and appropriate for consideration by the Court.

Entering in the Nightime, Escape, Assault and Battery on a Police Officer, Willful Destruction of Property, Larceny of a Motor Vehicle and Assault with a Dangerous Weapon (car) and Larceny. At age 22 in 1991, Prochilo was charged and convicted of Breaking and Entering of a Building with Intent to Commit a Felony for which he received an 8-10 year sentence with 3 years to serve and the balance suspended. He violated his probation on this offense and was reincarcerated. Subsequently, he was convicted of failure to stop for a police office, Assault and Battery with a Dangerous Weapon (car), Larceny and Leaving the scene of accidents.

In 1996, Prochilo was indicted and convicted of being a felon in possession of a firearm in this Court. This conviction was overturned by the First Circuit and the matter was returned to this Court for a retrial which resulted in a not guilty finding. Throughout this process, Prochilo was detained. Upon the conclusion of federal proceedings he returned to state custody to face state charges arising out of the alleged course of conduct from which the federal charge allegedly stemmed. Prochilo pled guilty to armed assault with intent to kill in state court for which he received a sentence of six years to six years in one day.[2]

For the past five years he has resided in a suburb of Boston with his wife whom he married after his release from the last period of custody described above, their two young children and her two teenage children from a prior relationship. Prochilo has been raising these children as well. The Prochilo family lives in a two family home with his wife's parents. Although the home is in the name of the wife's parents, the two households split the cost of the home equally.

---

[2]   Apparently the armed assault to intent to kill conviction arises out of shots Prochilo allegedly fired at a police officer seeking to apprehend him after he fled from a building into which he had allegedly broken into and was confronted by residents.

For the past two and a half years, Prochilo has been an owner with Edward Harris of P&H Construction Company.  Although he provided few details to Pretrial Services, Prochilo indicated that the company has been struggling to make a profit lately.  He did indicate that he had approximately two to three thousand dollars in a personal bank account as well as $5000-7000 in a business account.  He also stated that the business was worth about $7,500.  His only other reported asset was a truck work about $5,000.  Harris is a co-defendant in this case.  At the detention hearing, counsel for Prochilo announced that Prochilo intended to seek dissolution of the company and no longer intended to work with Harris in light of the evidence presented at the hearing of Harris' involvement in the charged conspiracy.

Perhaps unsurprisingly in light of the long and serious history of drug abuse by Prochilo's parents, Prochilo himself abused alcohol, cocaine and heroin.  By self-report, since his marriage in 2006, Prochilo ceased use of these substances except for daily smoking of marijuana.  Prochilo's wife states he has been sober since she has known him.

Since Prochilo's release from custody on the assault with intent to kill conviction, he has had further criminal charges.  He was arraigned on March 29, 2006 and convicted later that year of  Possession of Burglarious Tools, Breaking and Entering in the Nighttime With Intent to Commit a Felony, Larceny and Malicious Destruction of Property.  The Court has no further detail on these offenses for which he received a one year committed sentence; he self-surrendered to prison.

Several years later, on June 18, 2010, Prochilo was charged in Suffolk Superior Court with Breaking and Entering in the Daytime With Intent to Commit a Felony.  This charge remains pending.  It arises from a state wiretap investigation into a reputedly high level organized

crime figure named Mark Rossetti. Rossetti was tipped off that the victim (a heroin dealer) was a viable target for a "drug rip" which Prochilo and Harris (Prochilo's business partner) allegedly did with assistance from Rossetti and another. Prochilo and Harris were recruited by Rossetti to conduct surveillance and perform the robbery. Prochilo, Harris, and others were seen or videotaped casing the apartment by driving by it, walking by or up to it at times during which the apartment was allegedly empty according to information Rossetti had received on intercepted phone calls. On March 28, 2010, Rossetti was informed the apartment was empty; Prochilo and Harris were then seen approaching the home on foot, walking around to the rear and then, seven minutes later, returning. The observations were made both on video and by one state trooper. A search of the apartment thereafter revealed that a forced break-in had occurred. The officers also found no cash in the home, yet TVs and other portable electronic items and a kilo heroin remained. According to calls following these events, Harris and Prochilo stole 14 grams of heroin and several thousand dollars, perhaps as much as fifty thousand dollars. Defense counsel asserted that the identification of Prochilo and Harris is flawed and that the persons depicted in the video after the alleged break-in are not carrying anything. Prochilo was released on a $150,000 bond; the "majority" of this money was posted by John Borgosano a life long friend of Prochilo's. He reports bailing Prochilo out so that Prochilo could be with his (Prochilo's) wife and children and return to work. The money he posted was from a family trust for Borgosano's children. Borgosano reports that Prochilo has been labeled a "made man" though Borgosano says he sees no signs of such a status.

  Recently, Prochilo was arrested on the instant federal charges which allege criminal conduct during May and June of 2009. In summary form, the United States' alleges that

Prochilo, Harris and the third defendant conspired to transport a large amount of marijuana from Arizona to Massachusetts for distribution. Prochilo allegedly met with the seven plus persons recruited to drive the marijuana back to Massachusetts, at least once in Prochilo's family home, to discuss the plan. The drivers met up with Harris in Arizona where they were provided with prepaid phones and driving directions. Three of the seven sets of drivers were arrested pursuant to individual car stops in western states. The evidence supporting the charges against Prochilo derives from cooperating witnesses and records which corroborate portions of these witnesses' statements, specifically, hotel, cell phone and car rental records.

Several facts support the witnesses' statements of Prochilo's involvement. First, the corroboration of other portions of the witnesses' statements (not described in detail here because it concerns other defendants) buttresses the witnesses' statements generally. Second, Harris, Prochilo's business partner, paid for a car rental or plane ticket that appears to have been used in the course of the conspiracy with a credit and debit card from the construction business with Prochilo.

Third, one of the drivers arrested in Nebraska, in a series of phone calls to the driver's father back in Massachusetts, sought, via the father, "Michael's" assistance in securing the driver's and the driver's girlfriend's release on bail. The Court has listened to all of these calls. After the calls, $15,000 in cash is deposited into Prochilo's account and $16,000 is wired from Prochilo's account to a bail bondsmen in Nebraska. The bail was $15,000 for the driver and his girlfriend. The notion that Prochilo was simply helping a friend is unpersuasive given his difficult personal financial circumstances. Morever, the phone calls belie any such notion. Although the driver does not say Prochilo directed his activities in the marijuana conspiracy, the

tone, tenor, context and language of the calls depict a driver of marijuana reaching out for help from a higher person in the conspiracy. "Michael" is Prochilo: – Prochilo wired the bail money, the driver and Prochilo were longtime friends and during the calls the father called "Michael's" home and spoke to "Michael's" wife Juanna. That is the name of Prochilo's wife.

Finally, the cooperating witnesses report that they fear for their safety if Prochilo is released.

The defendant may be detained only if the Government establishes, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any person or the community or, by a preponderance of evidence, that he poses a serious risk of flight or of obstruction of justice. 18 U.S.C. § 3142; United States v. Salerno, 481 U.S. 739 (1987); United States v. Patriarca, 948 F.2d 789 (1st Cir. 1991).

The evidence heard by the Court as well as the Indictment establish probable cause that Prochilo committed an offense under the Controlled Substances Act, for which a maximum term of imprisonment of ten years or more is prescribed. Therefore, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Prochilo or the safety of the community if he were released. 18 U.S.C. § 3142(e). Without credible evidence to rebut the presumption, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir. 1985).

In making the determination whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community", the statute directs the Court to consider the following factors:

(1)     the nature and circumstances of the offense charges, including whether the offense

       is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including

    (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)    whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law;

(4)     the nature and seriousness of the danger to any other person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

In support of release, Prochilo offers the following conditions.

1. Prochilo will remain in the custody of three custodians: his wife, his mother-in-law (a seventeen year administrator of a nursing home) and his pastor.

2. Prochilo will remain on home confinement enforced by an electronic monitor, with or, if deemed necessary by the Court, without approval to leave the home to work on a union construction project. In either case, he requests permission to leave his home to attend Sunday Mass.

3. Prochilo will have no contact with potential witnesses in this case so designated by the Government.

4. Prochilo will refrain from all use of alcohol and controlled substances and submit to daily or random drug tests.

5. Prochilo and his wife will each sign an unsecured appearance bond in the amount of $250,000.

6. Prochilo's mother-in-law will post the family home in which she, her husband and Prochilo's family lives which has an approximate value of $485,000 and equity after the

mortgage of approximately $130,000.

      7.  Prochilo's step-mother-in-law will post her residence (in which she lives with Prochilo's now sober father) which home has an assessed value of $300,000 and no mortgage. The step-mother-in-law has lived in the home for thirty years.

      8.  Prochilo's father will post the two family home he owns which has an appraised value of approximately $400,000 and equity after the mortgage of approximately $145,000.

All three homes are offered to secure both Prochilo's appearance <u>and</u> his compliance with all conditions of release.  In addition, Borgosano offers to cross-post the $150,000 held by the state as bail money on the state charges and Prochilo agrees to submit to the standard conditions of release and any other reasonable conditions established by the Court.  Docket #15.

Although Prochilo describes the offer as consisting of approximately 1.225 million dollars in security, the Court calculates the amount somewhat differently.  The Court finds Borgosano's offer of limited significance.  He alternately suggests the $150,000 in bail money is his and that it came from a variety of friends and family.  Thus, the Court has concerns regarding his authority to pledge the money and the significance of any such pledge without further information regarding the source of the funds.  In addition, the $500,000 in unsecured bonds from Prochilo and his wife have somewhat limited force as nothing before the Court suggests that either have any meaningful assets to satisfy either bond.[3]  However, the offer of the three homes is undoubtedly significant.

The factors supporting detention are obvious – Prochilo has a lengthy record filled with many convictions including violent convictions, the presumption of detention applies and the sentence he faces is substantial – a five year mandatory minimum with a suggested guideline

---

    [3]  The Court notes that even absent the discounting discussed in the text, the Court would reach the same conclusion on the motion.

9

sentence in excess of twenty years. His record of compliance with the law and/or court orders is poor. Moreover, the concerns that animate the presumption in drug cases – a defendant charged as a leader of a sophisticated drug distribution operation with a long record of violence – are present here.

Insofar as Prochilo may suggest he has changed since his release from federal custody, or at least his marriage, the record does not support such a conclusion. In 2006 he was charged and convicted of breaking and entering in the nightime with intent to commit a felony, a serious and violent (under federal law definitions) offense. Indeed, this is an offense he had been convicted of previously. Moreover, he faces a similar pending charge (supported by intercepted phone calls, videos and an identification by a police officer) as well as the instant offense.

While the pending offense is non-violent by definition, it is nonetheless serious in at least two respects. The scope, organization and sophistication of the operation suggest calculated serious criminal conduct on a large scale. Prochilo's role appears to be that of fiancier or director. In addition, the jail sentence resulting, if a conviction occurs, is great – at least five years in federal prison and quite possibly much more given the much longer sentence suggested by the Sentencing Guidelines.

One particular factor of significance weighs in Prochilo's favor. Clearly he is devoted to his family as evidenced by his relationship with his much younger sister and the family devotion described in the letters submitted to the Court as well as the large number of friends and family appearing in Court to support him. Several of these family members have stepped forward to stake their homes to secure both his release and his compliance with all conditions. The Court accepts that these individuals appreciate the seriousness of their offers and the draconian

consequences each would suffer if Prochilo violated his conditions of release.

Nonetheless, the Court finds that the Government has met its various burdens of proof to establish that Prochilo poses a serious risk of flight, a serious risk of obstruction of justice and a danger to the community. That is there are no conditions or combinations of conditions that will reasonably assure Prochilo's appearance or the safety of any person and the community. Prochilo's record is long, his willingness and his ability to comply with the law or court orders weighs heavily against detention, and many if not all of the people with whom he appears to spend his time face pending charges and/or have significant criminal records, e.g. Harris, Rossetti, and one of the drivers arrested out West, other than his immediate family.  When the agents came to his home to arrest him on the instant federal charges, he hid in a doll or play house in the backyard until discovered, not an act of willful compliance.  While the Court recognizes that Prochilo would not lightly cause his family members to lose their homes, nothing suggests a willingness and ability to comply with the Court's conditions.  Given Prochilo's role in the instant offense, the compliance bonds will have little impact as both the perception and reality of enforcement in this case will be limited.

For the foregoing reasons, the Motion for Revocation of Detention (Docket #15) is DENIED and the Defendant is ORDERED DETAINED.

## ORDER OF DETENTION PENDING TRIAL

In accordance with the foregoing memorandum, IT IS ORDERED:

1. That Michael Prochilo, Jr. be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

    2. That Michael Prochilo, Jr. be afforded a reasonable opportunity for private consultation with counsel; and

    3. That on order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Michael Prochilo, Jr. is detained and confined shall deliver Michael Prochilo, Jr. to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

    THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/ Leo T. Sorokin  
LEO T. SOROKIN  
United States Magistrate Judge